IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

YASMINE FOSTER and
CHADWICK THOMPSON, JR.,

     Plaintiffs,

v.

DANNY KEITH STREEMAN;
JOHN DOE (1–3); and POLK
COUNTY, GEORGIA,

     Defendants.

CIVIL ACTION FILE

NO. 4:22-cv-148-TCB

# **O R D E R**

This case comes before the Court on the motion [18] for summary judgment filed by Defendants Danny Keith Streetman and Polk County, Georgia. Plaintiffs Yasmine Foster and Chadwick Thompson, Jr. have not responded to the motion,[1] indicating that it is unopposed. LR 7.1(B),

---

[1] Plaintiffs filed a motion [21] for extension of time to respond to the motion. The Court granted [22] that motion. However, the extended deadline—June 5—has come and gone, and Plaintiffs nonetheless failed to file a response.

NDGa. However, the Court may not enter summary judgment based merely on the fact that the motions are unopposed. *United States v. 5800 Sw. 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam)). Therefore, the Court will examine the pleadings and supporting evidence before reaching the merits of the motions.

## I.    Background

This case stems from an altercation in a trailer park in Polk County, Georgia. According to the complainant—non-party Destiny Morgan—Plaintiffs pushed Morgan to the ground following a verbal altercation, then began punching her in the face.

Streetman, a Polk County Police Department patrol officer,[2] was dispatched to the scene by Polk County 911. Upon his arrival, the altercation had ceased, and Plaintiffs had left the scene. However, Streetman spoke with Morgan, who provided her statement of the facts.

---

[2] Thompson testifies that Streetman is his mother's cousin whom he met on one previous occasion, though with no significant interaction at that point.

Two witnesses corroborated Morgan's basic account. Streetman saw a cut over Morgan's eye and requested an ambulance.

Based upon Morgan's and the witnesses' accounts, Streetman sought arrest warrants for Plaintiffs. The offenses for each Plaintiff were simple battery (for allegedly punching Morgan) and false imprisonment (for holding Morgan on the ground while attacking her).

The warrant affidavits for simple battery stated:

> Personally came Keith Streetman, who on oath says that the best of his knowledge and belief [each Plaintiff] did in Polk County commit the offense of misdemeanor battery between, on October the 7th, 2019 at 07:00 p.m. to October 7, 2019 08:00 p.m. the place of occurrence of said offense being 2565 Cartersville Highway, Lot 18.
>
> Said offense being described as a 16-5-23.1, Misdemeanor battery, one count.
>
> [Each Plaintiff] did commit the offense when [each] intentionally caused substantial physical harm or visible bodily harm to Destiny Morgan, which resulted in a cut over the left eye.

[17] at 44, 46.

And the warrant affidavits for false imprisonment stated:

> Personally came Keith Streetman, who on oath says to the best of his knowledge and belief, [each Plaintiff] did in Polk County commit the offense and felony false

3

imprisonment between October the 7th, 2019 at 7:00 p.m. to
October the 7th, 2019 at 8:00 p.m. The place of occurrence of
said offense being 2565 Cartersville Highway, Lot 18.

Said offense being described as 16-5-41. Felony false
imprisonment, one count.

[Each Plaintiff] did commit the above offense when
[each] detained Destiny Morgan without legal authority by
holding her to the ground and punching her.

*Id.* at 45, 47.

The judge issued two warrants for each Plaintiff. Upon learning of

the warrants, Plaintiffs turned themselves into the Polk County Jail,

where they stayed overnight. They were released the following day on

bond.

While the charges against Plaintiffs were pending, Foster and

Morgan reconciled. Morgan ultimately chose not to press charges

against Plaintiffs. She provided an affidavit to Plaintiffs' counsel that

changed the factual narrative she had provided to Streetman and stated

that she would not participate in a prosecution of Plaintiffs. In July

2021, the criminal charges against Plaintiffs were dismissed.

In their complaint, Plaintiffs assert claims for malicious

prosecution under 42 U.S.C. § 1983, state-law malicious prosecution,

state-law intentional infliction of emotional distress, and punitive

damages.

## II.    Legal Standard

Summary judgment is appropriate when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment

as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as

to a material fact if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *FindWhat Inv. Grp. v.*

*FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this

determination, "a court may not weigh conflicting evidence or make

credibility determinations of its own." *Id.* Instead, the court must "view

all of the evidence in the light most favorable to the nonmoving party

and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the

absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have

the burden of proof at trial, there are two ways for the moving party to

satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

## III. Discussion

Having reviewed the pleadings, evidence, and record in this case, the Court concludes that there is no genuine issue as to any material

fact and that summary judgment in favor of Defendants is appropriate on all claims.

### A.    Federal Claim

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).

To state a claim for relief under § 1983, Plaintiffs must satisfy two elements. First, they must allege that an act or omission deprived them of a right, privilege, or immunity secured by the U.S. Constitution. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, they must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v.*

*Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To claim qualified immunity, a defendant must first show she was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Plaintiffs do not dispute that Streetman was acting within the scope of his discretionary authority, and the Court finds that he was.

"Once discretionary authority is established, the burden then shifts to the plaintiff[s] to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The "clearly established" requirement may be met by one of three showings: (1) a materially

similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012).

To successfully bring a section 1983 claim for malicious prosecution, "the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "[T]he constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 882 (citing *Uboh v. Reno*, 141 F.3d 1000, 1002–04 (11th Cir. 1998)).

> A police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application "failed to establish probable cause," or if he made statements or omissions in his application that were material and "perjurious or recklessly false[.]" Concomitantly, a police officer cannot be liable for malicious

prosecution if the arrest warrant was supported by probable cause.

*Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (first quoting

*Kelly v. Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994); and then quoting

*id.* at 1554).

> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules[.]" It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Probable cause "is not a high bar."

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (first quoting

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003); then quoting *id.*; then

quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983); then quoting *id.*;

then quoting *id.* at 243 n.13; and then quoting *Kaley v. United States*,

134 S. Ct. 1090, 1103 (2014)).

Actual probable cause is not necessary, however. Even arguable

probable cause would allow Streetman to overcome qualified immunity.

*See Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007).

10

Actual probable cause exists when "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).

"Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018).

"A person commits the offense of simple battery when he or she either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another." O.C.G.A. § 16-5-23(a). Infliction of pain suffices to show physical harm. *Lyman v. State*, 374 S.E.2d 563, 564 (Ga. Ct. App. 1988). As stated, Morgan informed Streeter that Plaintiffs punched her, and Streeter observed her physical injuries. Witnesses corroborated Morgan's account.

"A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." O.C.G.A. § 16-5-41(a). Even a brief detention can establish false imprisonment. *Rehberger v. State*, 510 S.E.2d 594, 596 (Ga. Ct. App. 1998). Here, witnesses told Streetman that Plaintiffs held Morgan on the ground against her will and beat her.

The Polk County Magistrate Judge found that probable cause supported the charges. The Court gives "great deference" to the magistrate's probable cause finding. *Holland v. City of Auburn*, 657 F. App'x 899, 903 (11th Cir. 2016).

Based on the above, the Court finds that Streetman had probable cause.

Even if he did not have actual probable cause, however, Streetman certainly had arguable probable cause for the warrants. A reasonable officer in his position could have believe that probable cause existed.

Finally, based on the facts in the record, Plaintiffs have not provided evidence to show that Streetman acted with malice.

Therefore, the federal claim for malicious prosecution against Streetman fails on the merits. In addition, however, Plaintiffs have failed to provide evidence to show that Streetman violated law that was clearly settled.

On this basis, Streetman is entitled to qualified immunity on the federal claim against him. That claim will be dismissed.

## B.    State-Law Claims

Defendants contend that they are entitled to official immunity as to the state-law claims for malicious prosecution and intentional infliction of emotional distress. The Court agrees.

The state constitutional provision governing official immunity provides as follows:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the *negligent performance of, or negligent failure to perform, their ministerial functions* and may be liable for injuries and damages if they act with *actual malice or with actual intent to cause injury in the performance of their official functions* . . . .

GA. CONST. art. I, § 2, ¶ 9(d) (emphasis added). The Supreme Court of Georgia has held that the term "official functions" refers to "any act

performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." *Gilbert v. Richardson,* 452 S.E.2d 476, 483 (Ga. 1994). Accordingly, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts [ministerial or discretionary] performed with malice or an intent to injure." *Cameron v. Lang,* 549 S.E.2d 341, 344 (Ga. 2001). "In other words, public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." *Carter v. Glenn,* 548 S.E.2d 110, 112 (Ga. Ct. App. 2001).

Here, all alleged actions underlying the claims against Defendants were discretionary—investigating and obtaining arrest warrants. *See Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002). Thus, to recover damages, Plaintiffs would have to prove that Streetman acted with malice.

For purposes of official immunity, "'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice

14

in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." *Daley v. Clark,* 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).

When an officer effects an arrest with probable cause, there is no malice as a matter of law. *See Mercado v. Swoope*, 798 S.E.2d 291, 294 (Ga. Ct. App. 2017) (citation omitted). Because Streetman had probable cause, he did not act with malice and is entitled to official immunity. In addition, Plaintiffs have pointed to no record evidence—and the Court has found none—to support a finding of malice.

Streetman is entitled to summary judgment on the state-law claims based on official immunity.

## C.    Official Capacity

Although it is unclear from the complaint, Defendants have construed Plaintiffs' official capacity claim against Streetman as a claim against Polk County. Any such claim is subject to dismissal. First, as discussed above, there is no underlying violation by Streetman for which Polk County can be liable.

15

In addition, a county cannot be held vicariously liable under § 1983 for the conduct of its employees unless the plaintiff can show a "municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). "The plaintiff[s] must also demonstrate that, through its *deliberate* conduct, the [county] was the 'moving force' behind the injury alleged." *Id.* at 404.

Plaintiffs can establish a constitutional deprivation under § 1983 by identifying either "(1) an officially promulgated [Polk County] policy, or (2) an unofficial custom or practice of [Polk County] shown through the repeated acts of a final policymaker for [Polk County]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91); *see also Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989) ("Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit.").

"This 'official policy' requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech*, 335 F.3d at 1329 n.5 (alteration in original) (emphasis omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Any claim against Polk County fails because (1) Plaintiffs fail to show a constitutional violation and (2) a single incident involving an officer who is not qualified to establish County policy—all that is alleged here—cannot give rise to *Monell* liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Summary judgment will be granted as to any claim against Polk County.

### D.    Punitive Damages

Finally, because all substantive claims fail, summary judgment will be granted for Defendants on the claim for punitive damages.

17

## IV. Conclusion

For the foregoing reasons, Defendants' unopposed motion [18] for summary judgment is granted. The Clerk is directed to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED this 21st day of July, 2023.

Timothy C. Batten, Sr.
Chief United States District Judge